**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JANET GAY MORELAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-cv-726-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Janet Gay Moreland, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying plaintiff's application for disability benefits under Title II of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. # 14). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

**Review**

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. § 404.1508. The evidence

must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a).

## Background

Plaintiff was born July 15, 1953 and was 54 years old at the time of the Administrative Law Judge's ("ALJ") final decision on March 27, 2008.[1] (R. 20, 92). Plaintiff obtained a GED and completed secretarial training in 1980. (R. 20, 101). Plaintiff's prior work history includes twenty-five years as a mail processor at Phillips 66/ConocoPhillips (1980-2005). Plaintiff quit this job on November 28, 2005, the date on which she alleges she became unable to work. (R. 96).

Plaintiff stated on a "good" day, she gets up around 8:00 a.m., makes coffee, dresses, puts on makeup, runs errands, then is ready for bed at 7:30. On a "bad" day, she said she stays in bed. Plaintiff claims this "runs in cycles," sometimes she will have two good days to one bad, and at times good and bad days alternate every other day. (R. 103). She stated she is able to perform light cleaning and basic laundry. (R. 105). She claims she only eats "easy to fix" meals such as sandwiches and soup because she has a "hard time using hand and arm strength." Id. She claims pain prohibits many activities, and says she is able to shop "a couple of times a month" for approximately 30 to 45 minutes at a time. (R. 106).

In a form completed June 4, 2006, plaintiff claimed her "sickness came on [her]" February 18, 2005 with a dizzy headache, she was diagnosed with a herniated disk, yet she

---

[1] Plaintiff's application for disability was denied initially and upon reconsideration. (R. 36, 41-45, 37, 52-54). A hearing before ALJ Lantz McClain was held December 10, 2007, in Tulsa, Oklahoma. (R. 16-35). By decision dated March 27, 2008, the ALJ found that plaintiff was not disabled at any time through the date of the decision. (R. 5-15). On October 10, 2008, the Appeals Council denied review of the ALJ's findings. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

continued to work. She claims she became progressively worse until she ultimately quit November 28, 2005 because the pain was so bad, she "thought [she] was going to die." (R. 115-116).

At the hearing, plaintiff testified the problems that kept her from working were "just a lot of pain," that she becomes very dizzy and nauseous with sudden movement or lifting, and stated when the pain is severe, her vision is blurred to the point she is unable to drive. (R. 22). She said her typical daily activities include getting dressed, applying makeup, massaging her feet with a "machine by [her] bed," eating a breakfast bar, then sitting with heating pads. She stated she tries to "stay like [sic] moving because it's like I lock up so much," then stated she is unable to sit very long, so she "give[s] up, and [she] will just lay down on the heat." (R. 22-23). She stated she uses "booty things" on her feet to clean her hardwood floors, and has her sister and granddaughter come help with things such as dusting and deep cleaning. (R. 22). She has no computer at home, and claims she is unable to correspond with friends, because she is unable to stay focused. She states she is unable to hold a book or magazine up to read for longer than five (5) minutes at a time. (R. 24-25).

She claims she is only able to be on her feet (walking or standing) 15 to 20 minutes before becoming too uncomfortable and needing to sit. (R. 25). She also claims to be able to sit only 15 to 20 minutes at a time. (R. 26). She said she is able to lift a gallon of milk with both hands, but that she cannot reach and grab it. (R. 27). Plaintiff discussed her physical therapy, saying it helped keep her focus, taught her to do stretches and exercises that would not hurt her, and taught her how to cope with her problems and not injure herself. (R. 28).

Plaintiff's medical records begin with "Employee Health Report" records from her former employer, ConocoPhillips, dated May 3, 2003[2] to January 24, 2006, which show she is restricted on lifting, pushing/pulling, lifting, limited to no restrictive movement of her elbows and shoulders, she was also not to squat, bend or stoop. The final report shows plaintiff restricted to lifting only 10 pounds, restricted in all areas of reach, and restricted in walking, standing and sitting. There is a note in the records indicating that plaintiff's treatment is physical therapy and anti-inflammatory medication and that her prognosis is "fair to good." (R. 147-152).

Scott Brecheisen, DDS, wrote a letter March 4, 2005, explaining that plaintiff had been diagnosed with TMJ and that the treatment plan included the development of an orthotic device to correct her bite, relieving the stress to her temporomandibular joints. (R. 154).

Next, there are several records spanning the time frame of October, 2004 to October, 2005 from Michael R. Collins, M.D., showing plaintiff's gynecological care and various tests due to complaints of pain. (R. 156-165). No abnormal findings were made.

On November 28, 2005, plaintiff presented to Tracy Painter, M.D. at Regional Orthopedics Associates, P.C. complaining of right flank pain and numbness in the groin. Dr. Painter noted her complaints were vague and noted that upon physical examination she demonstrated no groin pain with rotation and she had full range of motion, and a negative straight leg raise. Dr. Painter noted an x-ray of plaintiff's back and hip showed no major bony abnormalities and minimal degenerative changes were seen. An MRI was performed that showed no nerve root impingement on the right side, but some on the left, which did not correlate with her clinical appearance. Dr. Painter recommended plaintiff see another doctor to

---

[2] This date is likely in error, since the form states the first day of missed work was November 28, 2005.

determine whether plaintiff's reported pain was related to her gastrointestinal system or possibly her kidneys. (R. 167).

The record next shows a "Return to Work Recommendations" form from Dr. Karen F. Wallis, dated December 5, 2005, noting plaintiff had a "herniated/bulging disc" and was unable to return to work and would be reevaluated the next day; however, no further record is found. (R. 168).

Records from Sheri Reinhard, M.D., who treated plaintiff from February, 2004 to May, 2006, show plaintiff was seen for a variety of complaints, ranging from sinus problems and depression complaints to headaches and complaints of pain. (R. 328-390).

Records from Mark D. Erhardt, D.O., who treated plaintiff from July, 2006 to February, 2007, reflect treatment for back pain and other various problems. (R. 394-442). On August 23, 2007, Dr. Erhardt completed a "Medical Source Opinion of Residual Functional Capacity" form, stating that plaintiff was able to sit two to three hours of an eight hour workday, stand/walk zero to one hour, lift/carry a maximum of 10 pounds with infrequent (0-1 hours) use of her arms to reach, push or pull, and occasional (2-3 hours) use of her hands for grasping, handling, fingering or feeling. He indicated plaintiff needed to rest "as indicated above" due to pain and fatigue. (R. 508).

Records from Barry R. Eisen, M.D. of Tulsa Gastroenterology, show a normal colonoscopy with a recommendation that plaintiff avoid fatty or fast foods. He placed her on Donnatal (for the treatment of irritable bowl syndrome). He noted a recent CAT scan did not show any significant findings. (R. 171-174).

There are several records from Jane Phillips Episcopal Medical Center, showing a range of visits plaintiff made, from emergency visits for sinus pressure to CT and MRI scans. Some are duplicate records from treating physicians. (R. 176-234).

Charles D. Holland, M.D., of Holland Ear, Nose and Throat Clinic, submitted records for plaintiff that range from August, 1998 to March, 2006, with a treatment gap of five years. (R. 235-250). These records indicate plaintiff suffers from allergies, sinus pressure and headaches. Skin tests were performed and plaintiff was placed on antihistamines and nasal spray. (R. 238). Due to plaintiff's complaints of headaches, Dr. Holland referred her for an MRI of her neck to check for a cervical degenerative disease that could be the cause, the results of which showed a small C6-7 disk herniation and "mild right C6-7 neural foraminal stenosis." (R. 239, 247). In October, 2005, Dr. Holland said plaintiff was "doing fine," and told her to continue use of her nasal spray. (R. 240). In January, 2006, Dr. Holland recommended plaintiff see another doctor to be evaluated for pain, since he believed plaintiff's pain was cervical or musculoskeletal in nature. (R. 241).

Plaintiff was referred to Alan L. Martin, M.D. by Dr. Reinhard with the complaint of pain in her neck, back and hip. (R. 252-259). Dr. Martin's impressions after physical exam show plaintiff's complaints were "out-of-proportion" with his findings. (R. 253). Plaintiff showed no signs of active inflammatory arthropathy (rheumatoid arthritis), or myopathy (disease of muscle or muscle tissue). Dr. Martin noted plaintiff had preserved range of motion in her hip, and that mild bursitis was present. Id. He recommended plaintiff continue treatment for depression with Dr. Reinhard, continue physical therapy and exercise regularly. He introduced Lyrica (fibromyalgia medication) and ordered a bone scan, which returned "unremarkable." (R. 254, 259). On August 22, 2006, Dr. Martin noted plaintiff changed her primary care physician from

Dr. Reinhard to Mark Erhardt, D.O. (R. 314). Dr. Martin also noted that plaintiff had full grip closure bilaterally and preserved range of motion in her shoulders, wrists, knees and hips. Id.

On May 9, 2006, agency reviewer, Cynthia Kampschaefer, Psy.D. completed a Psychiatric Review Technique form regarding plaintiff, evaluating 12.04 and found any impairment was not severe. (R. 260-273). Plaintiff's degree of limitation was listed as mild in restriction of daily activities, difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (R. 270). Dr. Kampschaefer's notes state that plaintiff "alleges no mental health issues," that there have been no hospitalizations, counseling or psychiatric care for mental issues but that plaintiff's treating physician prescribed Lexapro for depression. (R. 272).

On May 10, 2006, agency reviewer K. Rowlands, M.D. completed a physical residual functional capacity form for plaintiff. (R. 274-281). This RFC limited plaintiff to occasionally lifting/carrying 20 pounds, frequently lifting/carrying 10 pounds, standing/walking six hours in an eight hour workday, sitting for six hours in an eight hour workday with no limitations on pushing or pulling other than those already imposed for lifting/carrying. (R. 275).

The record includes several records from Jane Phillips Medical Center's physical therapy department, ranging from January 4, 2006 to May 31, 2006. (R. 283-298). These records show plaintiff presented with right hip and low back pain. (R. 295). Melissa Briggs, plaintiff's physical therapist, noted improvement, stating on May 18, 2006 that plaintiff would not be able to return to a medium physically demanding job at that point, but was able to "return to a sedentary job 4-6 hours a day." (R. 284).

Plaintiff then sought treatment at South Tulsa Physical Therapy. (R. 300-313). In the initial examination on June 16, 2006, the physical therapist noted the therapy goals were for plaintiff to become independent with a home program of exercise, increase functional muscle

strength, decrease her pain to a manageable level and restore her ability to exercise without increased pain. (R. 304). Physical therapy was recommended twice a week for eight weeks, with a midpoint reevaluation scheduled to check her progress. Rehabilitation potential for plaintiff was "good." Id. On August 17, 2006, the therapist noted plaintiff had attended ten sessions of therapy and had "made good progress," and the summary notes plaintiff was responding well to therapy, and she felt she had improved 40%. (R. 311-312).

Plaintiff was referred to Bartlesville Physical Rehabilitation twice by Dr. Erhardt, once in January, 2007, and again in June, 2007. In her initial evaluation, plaintiff mentioned her injury occurred at work while attempting to lift a large tote a year before, then said her pain began December 11, 2006 when she was forced to manually lift her garage door. (R. 447). The initial assessment states plaintiff has "good rehabilitation potential with attainable functional improvement." (R. 448). Plaintiff mentioned on a March 16, 2007 visit that she is "upset all the time" because she was having her home remodeled. (R. 480). On March 19, 2007, she claimed her house was "finally back together," she was taking multi-vitamins and she felt better than she had in years. (R. 482). On September 25, 2007, plaintiff asked to be discharged from therapy. (R. 520).

## Procedural History

Plaintiff alleges her impairments are fibromyalgia, temporomandibular joint pain (TMJ), back problems, cyst on right hip, and arthritis. (R. 42). In assessing plaintiff's qualifications for disability, the ALJ first stated plaintiff met the insured status requirements of the Act through December 31, 2011. Next, he determined at step one of the five step sequential process that plaintiff had not been engaged in substantial gainful activity since November 28, 2005, her alleged onset date. (R. 10). At step two, the ALJ found plaintiff to have the severe impairments

9

of degenerative disk disease of the cervical and lumbar spine. Id. He noted plaintiff alleged impairments related to fibromyalgia and vision problems, but found these conditions were not properly diagnosed. The ALJ then mentioned plaintiff's complaint of impairments related to TMJ and depression, but found the evidence of record did not substantiate the severity of those conditions, therefore, he found those impairments to be non-severe. Id.

At step three, the ALJ determined plaintiff's impairments did not meet the requirements of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). Id.

Before moving to the fourth step, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform work as follows:

> … occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 6 hours in an 8 hour workday, and sit at least 6 hours in an 8 hour workday.

(R. 10-11).

At step four, the ALJ determined that plaintiff was capable of performing past relevant work as a mail clerk, stating:

> The vocational expert testified based on the above-stated residual functional capacity, the [plaintiff] is able to return to her past relevant work as a mail clerk, as ordinarily performed. This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 C.F.R. § 404.1565).

(R. 15). Since the plaintiff did not meet her burden of proof through step four of the five step sequential evaluation process, the ALJ did not need to proceed to step five. Williams, 844 F.2d at 750.

The ALJ concluded that plaintiff was not disabled under the Act from November 28, 2005, through the date of the decision. Id.

**Issues Raised**

Plaintiff's allegations of error by the ALJ are as follows:

1. The ALJ failed to consider all the evidence;
2. The ALJ failed to properly consider the medical source opinions;
3. The ALJ failed to properly consider the [plaintiff's] credibility; and
4. The ALJ's residual functional capacity assessment is not supported by substantial evidence.

(Dkt. # 19 at 6-7).

**Review of Issues**

Plaintiff first alleges the ALJ failed to consider all the evidence, citing Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The example given by plaintiff is as follows:

> …the ALJ said that other than the medical opinion completed by Dr. Erhardt on August 23, 2007, 'the record does not contain any opinions from treating or examining physicians indicating that the [plaintiff] is disabled or that she even has limitations greater than those determined in this decision.'  Tr. 14.  That observation is clearly wrong as the record contains several opinions that are inconsistent with the ALJ's RFC assessment.

(Dkt. # 19 at 7). Plaintiff does not further attempt to identify which opinions she claims also support Dr. Erhardt's opinion. The Court is not in the position to decide on which evidence plaintiff's argument is based, and a review of the record does not make readily obvious the "several opinions" to which plaintiff refers.

The ALJ mentioned a report from "Dr. Wallis" on December 5, 2005, which stated plaintiff was "unable to return to work at this time," and reported plaintiff would be re-evaluated the following day. There is no further evidence of any records from Dr. Wallis. There is only one agency physical residual functional capacity (RFC) evaluation in the record, and it reflects the functional limitations the ALJ decided were credible. (See R. 274-281).

Plaintiff also alleges that the ALJ overlooked the MRIs in the record, as well as plaintiff's extensive physical therapy. (Dkt. # 19 at 8). The undersigned disagrees. Plaintiff's March 4, 2005 MRI results reflect "small central to right paracentral C6-7 disc herniation. Mild right C6-7 neural foraminal stenosis." (R. 222). The results from plaintiff's November 1, 2005 MRI test revealed "central to left paracentral L4-5 disc herniation with possible left L5 nerve root contact." (R. 185). On February 16, 2006, plaintiff's MRI results showed no disk herniation or spinal stenosis. (R. 202). The ALJ found plaintiff had the severe impairment of degenerative disk disease of the cervical and lumbar spine, clearly taking these results into consideration. (R. 10).

Plaintiff argues the ALJ did not fully consider her physical therapy records, only those that support his position. The ALJ fairly summarized plaintiff's physical therapy records, and noted "the evidence reveals the [plaintiff] has received extensive physical therapy, the record indicates the [plaintiff] continues to make good progress." (R. 14). The Court takes the lower tribunal at its word when it states it has considered the matter. Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008). The ALJ stated in his decision he gave "careful consideration [to] all the evidence." (R. 8). The ALJ must consider all the evidence, but he is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The undersigned cannot find that the ALJ overlooked plaintiff's physical therapy records.

Plaintiff next complains the ALJ failed to properly consider the medical source opinions by not discussing in detail records from Dr. Reinhard and Dr. Erhardt, who were both clearly treating physicians. Plaintiff also complains the ALJ did not fully discuss a report from South Tulsa Physical Therapy. The undersigned agrees as to Dr. Reinhard only.

Because plaintiff's therapist at South Tulsa Physical Therapy, is not an "acceptable medical source" as defined by 20 C.F.R. § 1513(a), the ALJ was not required to consider her opinion. However, according to SSR 06-03P, a therapist is considered an "other source," and their opinion can be considered to show the severity of an individual's impairment. The regulation further provides:

> [T]hese regulations provide that the final responsibility for deciding certain issues, such as whether an individual is disabled under the Act, is reserved to the Commissioner.
>
> These regulations provide specific criteria for evaluating medical opinions from 'acceptable medical sources'; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.
>
> Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose.
>
> …
>
> The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because, … 'acceptable medical sources' 'are the most qualified health care professionals.'

SSR 06-03P, 2006 WL 2329939 at *3-*4.

The undersigned finds the ALJ did consider the evidence from South Tulsa Physical Therapy, as well as Jane Phillips Episcopal Med Center and Bartlesville Physical Rehab and

found these records were consistent with other evidence in the file, and consistent with his RFC assessment. (R. 13).

The ALJ thoroughly discussed his reasoning for discounting the opinion of Dr. Erhardt, stating:

> With respect to Dr. Echardt [sic], it appears that the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the [plaintiff], which he references as 'patient information' and seemed to uncritically accept as true most, if not all, of what the [plaintiff] reported. However, as has been previously discussed in this decision, there exist good reasons for questioning the reliability of the [plaintiff's] subjective complaints. It must also be noted that this assessment by Dr. Echardt [sic] is entirely inconsistent with the evidence of record, in its entirety.

(R. 14-15). However, the ALJ fails to discuss in detail what weight he ascribed to Dr. Reinhard. With respect to records from Dr. Reinhard, the ALJ made this comment:

> On December 9, 2005, the [plaintiff] was seen by Sheri Reinhard, M.D. At that time, the [plaintiff] expressed the desire to return to work, therefore, Dr. Reinhard released the [plaintiff] to return to 'light duty work,' until the exact cause of her abdominal pain is determined. (Exhibit 5F).

(R. 12). The undersigned finds the ALJ did not evaluate Dr. Reinhard's records according to the requirements of 20 C.F.R. § 404.1527(d). Although it is highly likely that such an evaluation would not have changed the ALJ's decision, this case must be remanded for the limited purpose of explaining the weight the ALJ assigned to Dr. Reinhard.

Next, the plaintiff states the ALJ failed to properly consider the plaintiff's credibility. The undersigned disagrees. The ALJ discussed in detail his reasoning regarding plaintiff's credibility finding:

> After giving due consideration to credibility, motivation, and the medical evidence, the Administrative Law Judge is persuaded that the [plaintiff] exaggerates at least some of her symptoms. The Administrative Law Judge also finds that the [plaintiff's] reported activities are not indicative of her complaints of totally disabling pain and fatigue. Therefore, the degree of pain and fatigue

> alleged to be disabling cannot be found as fact by the undersigned. Specifically, the record indicates the [plaintiff] is able to self groom, cook, clean, do laundry, drive, shop in stores, pay bills, run errands, count change, handle banking material, socialize, and pay attention, concentrate, and get along with others. Therefore, the [plaintiff's] statements concerning her impairments and their impact on her ability to work are not entirely credible in light of the [plaintiff's] own description of her activities and life style, discrepancies between the [plaintiff's] assertions and information contained in the documentary reports, and the findings made on examination. Additionally, the Administrative Law Judge finds that the severity of the [plaintiff's] alleged symptoms is disproportionate in comparison to the usual expected severity of her condition.

(R. 14). The ALJ went on to describe several examples of plaintiff's exaggerated description of her symptoms versus the objective medical evidence of record. He concluded his credibility analysis stating:

> The Administrative Law Judge further finds that the description of the symptoms and limitations, which the [plaintiff] has provided throughout the record have generally been inconsistent and unpersuasive and she has not provided convincing details regarding factors that precipitate the allegedly disabling symptoms. Additionally, the [plaintiff's] description of the severity of the pain has been so extreme as to appear implausible and the description of symptoms is unusual, and is not typical for the impairments that are documented by medical findings in this case.

(R. 15). The ALJ is in the best position to assess credibility. Casias v. Secretary of Health & Human Services, 933 F.2d 799, 801 (10th Cir. 1991). The ALJ sees far more social security cases than appellate judges, and is uniquely able to gauge the abilities of an individual in a direct manner. Thus, the credibility findings of the ALJ warrant particular deference. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002).

Finally, the plaintiff alleges the ALJ's RFC assessment is not supported by substantial evidence. The undersigned disagrees. The ALJ explained his decision that plaintiff could return to her previous employment with several examples of improvement in her medical records and

testimony from the vocational expert at her hearing.  (R. 10-15).  The ALJ found at step four, that:

> The [plaintiff] is capable of performing past relevant work as a mail clerk.  The vocational expert testified based on the above-stated residual functional capacity, the [plaintiff] is able to return to her past relevant work as a mail clerk, as ordinarily performed.  This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 C.F.R §1565).

(R. 15).  The ALJ's RFC assessment is supported by substantial evidence.

## **Conclusion**

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  The Court further finds that there is substantial evidence in the record to support the ALJ's decision, with the exception of the weight assigned to Dr. Reinhard.  Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED IN PART and REMANDED IN PART solely for the purpose of allowing the ALJ to explain the weight provided to Dr. Reinhard's opinion.

SO ORDERED this 5th day of November, 2010.

_____
T. Lane Wilson
United States Magistrate Judge